[No. 12296. In Bank. — August 5, 1889.]

LAKESIDE DITCH COMPANY, Respondent, v. HENRY A. CRANE et al., Appellants.

Water Right — Prescription — Adverse Possession — Finding. — There can be no adverse possession of a water right, and title by prescription cannot be acquired, unless the acts constituting the adverse use are of such a nature as to give a cause of action in favor of the person against whom those acts are performed, and to raise the presumption of a grant of an easement as the only hypothesis on which to account for his failure to complain thereof. A finding of adverse possession, if material, is not sufficient unless it shows definitely a diversion of water of which the adverse party has a right to complain.

ID. — REVIEW OF EVIDENCE. — As to whether the evidence in this case shows a prescriptive right in the defendant, as against a prior appropriation of water by the plaintiff, the court is divided in opinion.

ID. — PRIOR APPROPRIATION — POWER OF WATER COMMISSIONERS. — The water commissioners of Tulare County have no power or right to take away the interest which a prior appropriator has in the waters of a stream; and it cannot be objected by a subsequent appropriator that the prior appropriator did not obtain permission of the water commissioners to construct a ditch or divert water.

ID. — DIVERSION OF WATER BY THIRD PARTIES — PLEADING. — When there is no denial in the answer of the allegation of the complaint that the defendants have diverted water from the plaintiff, it is not error for the court to refuse proof that water was diverted by other ditches later in time of diversion than either plaintiff's or defendants' ditches.

ID. — AMENDMENT OF ANSWER — NEW PARTIES. — It seems that an answer admitting an allegation of the diversion of water by the defendants may be amended to set up diversion of the water by third parties, and that the court might direct them to be brought in upon a proper showing, in order to obtain a complete determination of the rights of all in the waters of the stream. (Per BEATTY, C. J., THORNTON, J., and WORKS, J., concurring.)

ID. — FINDING AS TO EXTENT OF APPROPRIATION. — A finding as to the extent of appropriation of water by a ditch should be specific as to quantity, measured by some definite standard, as of inches or gallons, instead of by fixing the width, depth, and grade of the ditch.

CORPORATION — FINDING — EVIDENCE. — It is sufficient to sustain a finding that the plaintiff is a corporation to show by the evidence that it is acting as such, and doing business as a corporation *de facto*.

APPEAL from a judgment of the Superior Court of Tulare County, and from an order denying a new trial.

The facts are stated in the opinion of the court.

*Mich. Mullany*, and *Brown & Daggett*, for Appellants.

*Atwell & Bradley, Jarboe, Harrison & Goodfellow*, and *M. S. Babcock*, for Respondent.

PATERSON, J. — This is an action between rival appropriators to determine who has the superior right to divert water from Cross Creek, a natural watercourse, flowing through Tulare County. Plaintiff claims that the defendants have no right to any water until its ditch has been first supplied to its full capacity, and the court so decided.

The findings of the court are in several respects quite uncertain. It is found that on the first day of May, 1874, plaintiff took out and diverted through its ditch, under a claim of right, openly and adversely to the whole world, water "sufficient to fill its ditch, which was and is thirty feet wide on the bottom, and forty-six feet wide on top, and four feet deep, with a fall of one foot to the mile. And from the first day of May, 1874, so openly, peaceably, notoriously, and adversely continued to appropriate and use the waters of said stream, the waters so diverted and used being sufficient to fill its ditch *whenever there was water in the stream (Cross Creek) to fill it, and when there was not sufficient water to fill the plaintiff's said ditch, it took what water came down the creek in its natural flow.*" In view of the fact that the defendants' ditches divert water at points higher on the stream than the plaintiff's, it may be true, as stated by the court, that the plaintiff has continuously since 1874 diverted water sufficient to fill its ditch whenever there was water in the stream to fill it, and when there was not sufficient water to fill it, that it took what water came down the creek in its natural flow; and yet plaintiff might not have acquired any right as against defendants to a supply of water sufficient to fill its ditch. If the plaintiff's ditch was simply diverting water which the defendants allowed to pass down the stream while the head-gate of their ditch was closed, the act of the plaintiff in diverting the water thus permitted to pass down the stream could not, in the nature of things, be adverse to the right of the defendants. The latter could not complain, and title by prescription cannot be acquired unless the acts constituting the adverse use are of such a nature as to give a cause of action in favor of the person against whom those acts are performed. Title by prescription is created in such cases only where the conduct of the party who submits to the use by another cannot be accounted for on any other hypothesis than that which

raises the presumption of the grant of an easement. The conduct of the party claiming the benefit of the presumption must in all cases have been such in itself as to give the other party the right to complain. The defendants having no right to complain in the first instance, "we are not driven to the presumption of the grant of an easement to account for why they did not complain." (*Hanson* v. *McCue*, 42 Cal. 310.) If this finding is material, therefore,—and perhaps it is not, because plaintiff's right seems to be based upon prior appropriation,—it should be made more definite.

The court found that "neither the defendants nor their ancestors or grantors have at any time prior to the construction of the ditch complained of, to wit, the month of May, 1884, claimed or asserted any right to the waters of Cross Creek adversely to the plaintiff," and that the defendants' ditch from the time of its construction, in 1876, until May, 1884, "carried away no appreciable quantity of water," but these findings are not supported by the evidence. The evidence shows, without substantial conflict, that the Hyde ditch, owned by defendants, was finished and commenced to divert water in the spring of 1876, and that those who have owned and controlled it have ever since continuously, uninterruptedly, and under a claim of right, adverse to all the world, during the irrigating season of each year, diverted water through the same from Cross Creek for the purposes of irrigation. There is evidence tending to show an interference with the Hyde ditch, but it is so slight that those who performed the acts of interruption may be regarded simply as trespassers, and the intrusions not long enough to raise a presumption that those in possession of the ditch knew of the trespass, or sufficient to show a break in the continuity of the adverse use.

As between the parties hereto, there is no question of riparian rights, and in view of the evidence as to the uninterrupted use by defendants of their ditch, it is

immaterial, so far as the quantity of water diverted by the Hyde ditch is concerned, that the plaintiff's original appropriation of the water was prior to that of the defendants.

There is some evidence tending to show that the Hyde ditch was enlarged about the year 1882, and its carrying capacity greatly increased; but the defendants are entitled to a finding as to the quantity of water carried by their ditch during its uninterrupted use by them prior to 1882. It is clear that the ditch carried away an *appreciable* quantity of water. How much—what quantity—we do not pretend to say. It is for the trial court to determine that matter.

Appellants claim that the plaintiff shows no right whatever to divert water, because it never obtained permission of the water commissioners of Tulare County to construct a ditch or divert water. This contention is based upon section 3 of a statute appointing water commissioners for Tulare County. The section provides: "No ditch shall hereafter be taken out of any stream in the waters of which different persons have an interest by virtue of prior appropriation, without leave of said commissioners." (Stats. 1868, p. 112.) The defendants have no interest in the waters of the stream "by virtue of prior appropriation." No prior appropriators are complaining of any act of the plaintiff. It is not claimed that there has been any appropriation of any of the waters of Cross Creek below the ditch of plaintiff, and in the absence of such appropriation, no one can be injured by the act of plaintiff. The fact that defendants obtained the permission of the water commissioners to build their ditch and divert water, does not give them any right as against the plaintiff herein, who was a prior appropriator. The statute does not confer upon the board of water commissioners the right to take away the interest which a prior appropriator has in the waters of a stream.

We think that the evidence in support of the finding that the plaintiff was a corporation, acting in good faith

as such, is sufficient. It was recognized in the community as a corporation, the records of its proceedings shows that it was so acting, and in all its dealings it was styled as a corporation; it has pursued corporate forms of action, held corporate meetings, and, we think, comes within the provisions of section 358 of the Civil Code, which provides that "the due incorporation of any company claiming in good faith to be a corporation, and doing business as such, shall not be inquired into collaterally in any private suit to which such *de facto* corporation may be a party." (*Oroville & V. R. R.* v. *Plumas Co.*, 37 Cal. 361.)

The defendants offered to prove that there were other ditches diverting water from the creek above defendants' ditches, which other ditches were later in time of diversion than either plaintiff's or defendants' ditches. The court did not err in refusing to admit this proof. The defendants did not deny that they diverted the water. There was, therefore, no doubt as to who did divert the water. The fact that other persons may have invaded the plaintiff's right was immaterial.

The ruling of the court in admitting evidence as to who had the control and management of the Lakeside ditch is inconsistent with its ruling upon the same subject when evidence was offered in behalf of the defendants. We think the court erred in excluding the latter.

We have considered other assignments of error made by appellant, but see nothing prejudicial in any of them.

As the case must go back for a new trial, it is proper to suggest that the findings of the court upon the question what quantity of water the plaintiff was entitled to have flow past defendants' ditches should, if possible, be made definite by naming the number of inches or gallons, instead of by fixing the width, depth, and grade of the ditch. A finding that plaintiff is entitled to have its ditch supplied to its full capacity may lead to future disputes and litigation. In view of the character of the soil, the capacity of the ditch is likely to change rapidly.

Appellant complains that under the decision of the court as it stands, "plaintiff would be relieved from all diligence and exertion in maintaining a dam, or securing the waters of the creek from running idly and wastefully past the head of the Lakeside ditch, and the defendants would be wantonly deprived of the water for their ditches, while all other ditches heading upon this creek might be amply supplied with water, and while abundance of water would be running waste."   Of course, if the plaintiff does not use proper care to preserve the water which passes the head of the defendants' ditch to it, the plaintiff cannot complain that its ditch is not supplied with water.

Judgment and order reversed, and cause remanded for a new trial.

McFARLAND, J., and SHARPSTEIN, J., concurred.

BEATTY, C. J., concurring.—As I construe the findings of the superior court, they show with sufficient clearness that from the completion of plaintiff's ditch, in 1874, down to the year 1884, it has continuously diverted water sufficient to fill said ditch, excepting only when the natural flow of the stream (Cross Creek) was insufficient to fill it, and that at such times it diverted all of such natural flow; that the Hyde ditch of defendants, as originally constructed, in 1876, diverted no appreciable quantity of water, but that after, and only after, the enlargement of the Hyde ditch, in 1882, and the subsequent construction of the Manning ditch, the defendants have been diverting water included in plaintiff's appropriation.   I should not, therefore, regard the findings as insufficient in this respect, even if the plaintiff's right was founded exclusively upon prescription. But the truth is, plaintiff's right rests upon a prior appropriation, and does not need to be supported by proof of uninterrupted *user*, and if the findings require the construction placed upon them in the opinion of the court, the fault seems to me to be immaterial.

The defendants, on the other hand, must rely upon prescription to justify a diversion of any water previously appropriated by the plaintiff, and upon that point I do not consider that the finding of the superior court against defendants' claim is so clearly unsupported by the evidence as to justify us in reversing it. The testimony seems to be entirely consistent with the view that from 1876 to 1884 the original (unenlarged) Hyde ditch diverted no appreciable quantity of water, except when the stream was high and water abundant.

As to the offer of the defendants to show that other persons, not parties to the action, had taken out water higher up the stream, by means of ditches constructed later than any diversion by plaintiff or themselves, and that such more recent diversions of water were the real cause of the injury to plaintiff, I think the ruling of the court excluding the testimony was correct in the present state of the pleadings. To make such testimony material, defendants should set up in their answer the facts showing the necessity of making such third persons parties to the action, in order to a complete determination of the rights of all in the waters of the stream. Upon a proper showing of the facts,—which I think should be allowed by amendment, if requested,—the court might direct other subsequent appropriators to be brought in.

Differing in these particulars from the views expressed in the opinion of the court, I nevertheless concur in the judgment, upon the ground that there should have been a more specific finding of the exact quantity of water, measured by some definite standard (miners' inch, for example), appropriated by plaintiff, and that the decree should have been equally specific in its injunction.

THORNTON, J., concurred.

WORKS, J., concurred in the judgment, and in the views expressed by Chief Justice Beatty.