[L. A. No. 599.   In Bank.—May 3, 1900.]

## THE PEOPLE, Appellant, v. LINDA VISTA IRRIGATION DISTRICT, Respondent.

IRRIGATION DISTRICT—PROCEEDING IN REM UNDER CONFIRMATORY ACT—RES ADJUDICATA—QUO WARRANTO.—A proceeding under the confirmatory act of 1889, supplemental to the Wright irrigation act, taken in the superior court, in which was confirmed the validity of the organization of an irrigation district, and of the bonds issued thereby, under the provisions of the Wright act, is a proceeding *in rem*, the judgment in which is *res adjudicata* and binds the whole world, including the state,. and is a bar to a subsequent proceeding by the state in *quo warranto*, assailing the validity of the organization of the irrigation district.

ID.—AUTHORITY OF DECISIONS—CONSTRUCTION OF STATE STATUTES.—The supreme court of this state has authority to construe a statute of this state according to its own lights, and in consonance with its own decisions, and is not bound to follow the authority of a decision of the supreme court of the United States upon that subject matter, where no question is involved under the constitution of the United States.

ID.—CONSTITUTIONALITY OF CONFIRMATORY ACT—TITLE.—The confirmatory act of 1889 is constitutional and valid. Its title as "supplemental to an act entitled 'An act to provide for the organization and government of irrigation districts, and to provide for the acquisition of water and other property, and for the distribution of water thereby for irrigation purposes,' approved March 7, 1889, and to provide for the examination, approval, and confirmation of proceedings for the issue and sale of bonds issued under the provisions of said act," is sufficiently comprehensive to include a provision for ascertaining the validity of the organization of the district as a necessary condition precedent to the testing of the validity of the issue of bonds.

ID.—GENERAL PURPOSE OF STATUTE DECLARED IN TITLE—DETAILS NOT SPECIFIED—NECESSARY INCIDENTS.—It is not necessary that the title of an act should embrace an abstract or catalogue of its contents; but, when the general purpose of the act is declared, the details provided for the accomplishment of that purpose will be regarded as necessary incidents, though not specified in the title.

APPEAL from a judgment of the Superior Court of San Diego County.   E. S. Torrance, Judge.

The facts are stated in the opinion.

W. F. Fitzgerald, Attorney General, Tirey L. Ford, Successor, George Fuller, and Smith, McNutt & Hannon, for Appellants.

Rodgers, Paterson & Slack, and C. W. Eastin, *Amici Curiae*, also for Appellants.

L. A. Wright, Frederic W. Stearns, and Wadham & Stearns, for Respondent.

C. C. Wright, and W. H. Anderson, *Amici Curiae*, also for Respondent.

GAROUTTE, J.—This is an action brought in the name of the people of the state by the attorney general, in the nature of *quo warranto* against the Linda Vista Irrigation District, a district organized in this state under an act of the legislature popularly known as the Wright irrigation act. Though litigation occasioned by the Wright act, amendments thereof, and acts supplemental thereto, as evidenced by a reference to the later volumes of the reports of this state, has been most prolific, yet the present action is the first of its kind bearing upon irrigation legislation. It is sought by the state to secure a judgment declaring this irrigation district was never organized according to law, and excluding it from all corporate rights, powers, and franchises. The complete history of the organization of the district is set out in the complaint in detail, and also we find set out therein the proceedings taken under the confirmatory act of 1889, which culminated in a decree of the superior court of San Diego county to the effect that the district was regularly organized, and the bonds issued composed a valid issue. A general demurrer, accompanied by a special plea of the statute of limitations, was presented to the complaint and sustained. The sufficiency of this demurrer is the only issue before the court upon this appeal. A great many important legal questions are discussed by the respective counsel in this case, especially as to the bearing had upon this litigation by various special and general statutes of limitations. But in view of our conclusion as to the scope and effect of the act of the state legislature known as the "confirmatory act" we find that other matters do not demand our consideration.

The confirmatory act found in the statutes of 1889, page 212, to which we have previously referred, is entitled "An act supplemental to an act entitled 'An act to provide for the organization and government of irrigation districts, and to provide for the acquisition of water and other property, and for the distribution of water thereby for irrigation purposes,' approved March 7, 1887, and to provide for the examination, approval, and confirmation of proceedings for the issue and sale of bonds issued under the provisions of said act." And it is now insisted that the proceeding taken in the superior court of San Diego county for the organization of the district under authority of this act, which culminated in a declaration of the court that the organization of the district was valid, and likewise that the issue of bonds was valid, operates as a bar against the state in the prosecution of this action. It is first claimed that it is a bar by judgment; and next it is claimed that if the proceeding prescribed by the act be one which does not culminate in a judgment, but simply culminates in a certificate of the validity of the proceedings, which certificate may be used as evidence in other litigation, still this certificate would be conclusive evidence of the validity of the organization of the district, and, therefore, would be as effective and available as though it amounted to *res adjudicata.*

The supreme court of the United States, speaking through Mr. Justice Brewer, in *Tregea v. Modesto Irr. Dist.,* 164 U. S. 179, held that this confirmatory act was simply legislation enacted for the purpose of procuring evidence of the validity of the organization of irrigation districts, in order that such evidence might be used in subsequent litigation in which the district was interested. In the opinion of the court in that case, in speaking of the decree or judgment which might be rendered under the confirmatory act, the court said: "We do not mean to intimate that it may not have effect as evidence, like the certificate of an auditor declared by a legislature to be conclusive, but is it not simply as evidence and not as *res adjudicata?* . . . . Would it not be held in effect, whatever the form, a mere *ex parte* case to obtain a judicial opinion upon which the parties might base further action? It seems to us that this proceeding is, after all, nothing but one to secure evidence;

that in the securing of such evidence no right protected by
the constitution of the United States is invaded, and that the
state may determine for itself in what way it will secure evi-
dence regulating the proceedings of any of its municipal cor-
porations, and that unless in the course of such proceeding
some municipal right is denied to the individual, this court
cannot interfere on the ground that the evidence may there-
after be used in some further action in which there are ad-
versary claims." And by reason of the foregoing views of the
court the appeal in that action was dismissed.

The action of *Tregea v. Modesto Irr. Dist., supra,* was one
arising under the confirmatory act. The construction given the
act by the highest court in the land is one new to this court.
If the act be one alone to secure evidence of the validity or
invalidity of the organization of irrigation districts, the state
legislature, beyond a doubt, enacted legislation never contem-
plated by that body. Indeed, this court, in construing the act,
has given it a construction of an entirely different character.
When the case of *Tregea v. Modesto Irr. Dist., supra,* was before
this court *(Board of Directors v. Tregea,* 88 Cal. 334), the act
was then construed, and the court said: "The object of the
proceedings is, of course, to compel every person interested in
the district, and whose property is to be bound for the pay-
ment of its debts, to come into court, and within the time lim-
ited present and submit to judicial investigation any and all
objections he may have to the regularity of the organization
of the district, and all other matters affecting the validity of
the bonds, so that it may be finally and conclusively deter-
mined by a judgment, which neither he nor his successors in
interest can thereafter question, whether such bonds are legal
and valid, or not." In the case of *Rialto Irr. Dist. v. Bran-
don,* 103 Cal. 384, the act is construed as follows: "It was not
error to admit the decrees of the superior court affirming the
regularity of the proceedings for plaintiff's organization as an
irrigation district to establish facts therein decreed. The pro-
ceeding in which that decree was rendered was a proceeding
*in rem,* had and authorized for the express purpose of fixing
the legal status of the corporation. And that decree concluded
the whole world upon all the questions involved." The fore-

going construction of the statute is fully supported by the cases of *Crall v. Poso Irr. Dist.*, 87 Cal. 140, and *Cullen v. Glendora Water Co.*, 113 Cal. 503.

Indeed, it may be said that almost every line of the act supports the aforesaid conclusion of this court as to its scope, purpose, and effect. The fact that a motion for a new trial is provided for, an appeal therefrom to this court allowed, and also a right of appeal given from the judgment, stamps the act as one providing for judicial action and one intended to lay down a procedure which should culminate in the judgment of a judicial tribunal. This court has no doubt but that it is both its right and duty to construe statutes enacted by the law-making power of its own state according to its own lights. Whether or not the supreme court of the United States should follow this court's construction of state statutes is not a matter here material. And, while perfectly willing to change its views as to the true construction of this act when good cause is shown therefor, yet, as now advised, it still adheres to the construction given it in the previous decisions of the court.

It may be suggested in passing that if this act should now be construed by this court upon the lines of the decision in *Tregea v. Modesto Irr. Dist., supra*, as decided by the supreme court of the United States, then grave doubts are at once presented as to its constitutionality. For that the title of the act in any way suggests legislation of the character there intimated presents a question admitting of the gravest consideration; and that, too, whether the decree of the superior court be held to amount to conclusive evidence of certain facts, or only *prima facie* evidence of those facts.

In *Tregea v. Modesto Irr. Dist., supra*, much is said tending to weaken the force and vitality of the confirmation act, as an act providing for judicial procedure and judgment. It is there said, in speaking of the appeal then before the court: "But, going beyond this matter, we are confronted with the question whether, in advance of the issue of bonds, and before any obligation has been assumed by the district, there is a case or controversy with opposing parties, such as can be submitted to and can compel judicial consideration and judgment. This is no mere technical question. . . . . All that could be accomplished

CXXVIII. CAL.—31

by an affirmance of the decision of the state court would be an adjudication of the right to make a contract, and, unless the board should see fit to proceed in the exercise of the power thus held to exist, all the time and labor of the court would be spent in determining a mere barren right—a purely moot question." And again the court said: "It may well be doubted whether the adjudication really binds anybody." It is thus plainly manifest that, under the construction this court has always given the act, we find it badly maimed by this decision of the supreme court of the United States rendered in dismissing the appeal in the Tregea case. It is to be regretted that the opportunity did not present itself to that court at that time to test the validity of the act in the crucible furnished by the constitution of the United States, giving the act the construction placed upon it by this court. But by our decisions the constitutionality of the act has been directly and impliedly passed upon and approved more than once. And we will not now enter into a discussion of that question. The issue was squarely made and met in *Crall v. Poso Irr. Dist., supra,* and *Cullen v. Glendora Water Co., supra;* and we leave the matter resting upon those decisions and the cases there cited.

It is next insisted that the state is barred and estopped from bringing this action by reason of the proceedings taken under the confirmatory act in San Diego county, which resulted in a judgment to the effect that the organization of the district was regular, and the issue of bonds constituted a valid issue. If the construction of this confirmatory act heretofore given by this court be the correct construction—if the judgment rendered under that act be a judicial decision possessing the scope, effect, dignity, and efficacy of the usual and ordinary judgment of courts of general jurisdiction, if it be not only such a judgment, but a judgment *in rem*—then the state, like an ordinary individual, is estopped from questioning it. Such a judgment is binding on the whole world, and the state comes within that territory. No case is cited, and we believe there is none, holding that a judgment *in rem* does not bind the state. This question as to the binding force and effect of such a judgment upon the state was directly raised and decided in *State v. McGlynn,* 20 Cal. 233; 81 Am. Dec. 118. That was an action brought

by the state, and it was held that the state was barred by a judgment *in rem* which had been rendered upon the probate of a will declaring that will to be a valid and testamentary instrument.   And likewise in *State v. Blake,* 69 Conn. 78, as to the probate of a will, it was held as to the state: "The present plaintiff was a party to that proceeding sufficiently to be bound thereby."   In speaking as to the right of the state to inquire into these matters by *quo warranto,* the supreme court of Texas, in *State v. Goodwin,* 69 Tex. 57, said: "The legislature, however, may make the fact of incorporation or no incorporation to depend upon the action and determination of some official or tribunal whose determination the courts will have no power to revise, and, if this be done, in a proceeding by *quo warranto* against persons who assume to exercise powers given by the act of incorporation, no inquiry can be made into the legality of the corporation."   If such action and determination of an official or tribunal is a conclusive bar to subsequent proceedings by the state in *quo warranto,* it surely cannot be urged successfully that a judgment, such as we have here, unappealed from and final in all respects, is not a bar to a proceeding in *quo warranto* by the state.   The decisions from this state which we have heretofore quoted, and others not quoted, declare that proceedings taken under this act are judicial in character, culminating in the judgment of a judicial tribunal, and that such judgment is one fixing the status of these irrigation districts, and binding on all the world.   For this reason, it seems the state is foreclosed, by the judgment rendered in San Diego county, from attacking the validity of the organization of this district and the validity of the issue of bonds made by the district.

It is sought by this action to re-examine the identical questions passed upon by the superior court of San Diego county. The judgment rendered in that court is not attacked on any equitable grounds, even if such a thing were within the law. But it is alone sought to again go over the various steps leading up to the order made by the board of supervisors, and the judgment of the superior court declaring defendant an irrigation district regularly and legally organized under the Wright irrigation act.   As supporting a claim of right to now

review that action, it is urged that the state was not a party to the confirmatory proceeding. If the judgment was one *in rem*, it would seem, *ex necessitate*, that the state was a party to the proceeding. It was so held in the McGlynn case. We cannot imagine a judgment *in rem* to which the state would not be a party. The very nature and character of such a judgment forbids any other conclusion. It is insisted that the confirmatory act itself does not contemplate or allow the state to appear as a party at the trial held under the provisions of the confirmatory act. The act says: "The notice shall state the time and place fixed for the hearing of the petition and the prayer of the petition, and that any person interested in the organization of said district, or in the proceedings for the issue or sale of said bonds, may, on or before the day fixed for the hearing of said petition, demur to or answer said petition." Again the act says: "Any person interested in said district, or in the issue or sale of said bonds, may demur to or answer said petition."

When we look at the purpose of this act, as indicated by its face, and as more clearly indicated by the decisions of this court, it is apparent that there never was any intention upon the part of the state legislature that the state should be allowed by *quo warranto*, or in any other way, to attack the organization of these districts after a judgment of confirmation had been had. If that could be done, then the entire confirmatory act is useless legislation—a mere nullity. A judgment under the act would settle nothing. Again, under the provisions of the act just quoted, we are satisfied that the state could have appeared at the trial held under the confirmation act and have denied the organization of the district. The opportunity then presented itself and the state should have embraced it. Hence it has not been deprived of an opportunity to make the attack which it is now making.

This court has repeatedly held that corporations of the character of defendant are *quasi* public corporations; and by the complaint in this action it appears that the defendant is, at least, a *de facto quasi* public corporation. This court has also repeatedly held that upon collateral attack the validity and regularity of the organization of this class of corporations cannot be questioned. (*People v. La Rue*, 67 Cal. 530; *First Bap-*

*list Church v. Branham*, 90 Cal. 22; *People v. Montecito Water Co.*, 97 Cal. 276; 33 Am. St. Rep. 172; *Reclamation Dist. v. Gray*, 95 Cal. 601; *Swamp Land Dist. v. Silver*, 98 Cal. 51; *Quint v. Hoffman*, 103 Cal. 506; *Reclamation Dist. v. Turner*, 104 Cal. 334; *Hamilton v. County of San Diego*, 108 Cal. 284.) If a proceeding in *quo warranto* by the state must be resorted to in order to test the *de jure* character of these corporations, the confirmatory act would serve no purpose on the statute books if the state be not bound by the judgment rendered in the proceeding. Indeed, it would seem, in the light of the above decisions of this court, that this statute was enacted for the very object of binding the state. We see no other practical purpose that could have actuated the mind of the legislature in creating it.

It is claimed that the confirmatory act is unconstitutional in this: That the subject matter thereof is not covered by the title. The title of this act is hereinbefore set out. It is not necessary that the title of an act should embrace an abstract or catalogue of the contents. "When the general purpose of the act is declared, the details provided for the accomplishment of that purpose will be regarded as necessary incidents." (*Ex parte Liddell*, 93 Cal. 636.) In *Spier v. Baker*, 120 Cal. 370, it was held that an act, by its title pertaining to primary elections, could not contain legislation as to political conventions. Such character of legislation furnishes a clear example of a violation of the provision of the constitution here involved. In a proceeding brought for the purpose of determining the validity of an issue of bonds, one of the most vital questions arises upon the validity of the organization of the district, contemplating the issue of said bonds. A valid organization of the district is a condition precedent to a valid issue, and, of necessity, the validity of the organization must be considered and passed upon in a proceeding brought directly to test the validity of the issue of bonds. For this reason we deem the title sufficiently broad to cover the subject matter of the act.

It is ordered that the judgment be affirmed.

Van Dyke, J., McFarland, J., Harrison, J., and Beatty, C. J., concurred.

Rehearing denied.